IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| BRIANNA RANDLE and SYWAYNE BURGESS, § § § | |
| Plaintiffs, § § | |
| v. § | Civil Action No. 4:23-cv-00263-O-BP |
| § | |
| THE PNC FINANCIAL SERVICES GROUP, *et al.*, § § § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Amended Complaint (ECF No. 42) filed by Plaintiffs Sywayne Burgess ("Burgess") and Brianna Randle ("Randle"); the Motion to Dismiss ("Motion") and brief in support filed by Defendants The PNC Financial Services Group, Inc., PNC Bank, NA (collectively, "PNC"), Michelle Nowlin, Cindy Avina, Ashley Alvarez, and Karina Chapa (collectively, the "PNC Defendants") (ECF Nos. 45-46); Plaintiffs' Response and brief in support (ECF Nos. 51-52); and the PNC Defendants' Reply (ECF No. 54). This case was automatically referred to the undersigned pursuant to Special Order 3. ECF No. 6. After considering the pleadings and the applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** the Motion in part, **DENY** it in part, and **DISMISS with prejudice** all of Plaintiffs' claims against the PNC Defendants except for Burgess's 42 U.S.C § 1981 claim against Cindy Avina.

I.   **BACKGROUND**

This is a case against a bank and certain of its employees for alleged racial discrimination against two of its accountholders, Burgess and Randle. The accountholders each had accounts at

PNC, and their claims arise out of three interactions they had with the PNC Defendants on December 16 and 21, 2022, and January 27, 2023. ECF No. 42. For ease of reference, the Court refers to each individual defendant by her last name.

On December 16, 2022, Burgess and Randle visited PNC Bank to withdraw $28,000 from Burgess's account after GEICO insurance transferred these funds to him. ECF No. 42 at 7. Randle accompanied Burgess to help him fill out the withdrawal slip because he is "disabled and at times ha[s] difficulty filling out information." *Id*. at 7-8. Chapa began to assist Burgess and Randle with this transaction, and when she saw the amount Burgess wished to withdraw, she asked him a series of questions such as "'Where do you work?', 'Where did you get this kind of money?', 'Why did [GEICO] give you this amount of money[?]', 'Where are you from?', [and] How long have you been living at this address ?'" *Id*. at 8. Avina then joined and told Burgess that he would need to make a prior request to withdraw that amount. *Id*. Burgess needed the money urgently, so he began inquiring as to how to do so. *Id*. Ultimately, PNC did not have the cash on hand, so Chapa took Plaintiffs' contact information to complete the transaction later. *Id*.

On December 21, 2022, PNC called Burgess and informed him that his funds were ready for pick up. ECF No. 42 at 8. Randle again accompanied him to the bank to assist him with the withdrawal. *Id*. at 7-8. Chapa, however, insisted that Randle step away and not assist Burgess. *Id*. at 8. Chapa proceeded to ask Burgess the same questions as before as well as others regarding his country of birth, citizenship, and his mother's maiden name. *Id*. at 9. The seemingly duplicative questioning bothered Plaintiffs, and they felt that Chapa was being unprofessional. *Id*. So, they asked to speak with Chapa's manager. *Id*. Avina joined, claiming to be the branch manager. *Id*.

Avina and Chapa apparently refused to answer Plaintiffs' questions, and Plaintiffs were upset that the money was not immediately forthcoming, even though PNC told Burgess on the

telephone that it was ready for pickup. ECF No. 42 at 9. Plaintiffs allege that as the interaction continued, Avina said that "she would not help people like y[']all" and that she did not "trust people like y[']all." *Id*. at 10. Plaintiffs asked Avina to clarify whether she meant "black people," which Avina confirmed. *Id*. Avina told Plaintiffs that she did not feel comfortable with them standing by her window, and she said that she "need[ed] to watch her desk so" that the Plaintiffs did not "take anything." *Id*. Avina then asked Plaintiffs to sit down while she called the police. *Id*. Plaintiffs also called the police. *Id*. While the parties awaited the police's arrival, Burgess alleges that he saw Avina holding the money and overheard her say that she would make sure that the Plaintiffs did not receive the money. *Id*. at 10. She also directed another employee not to answer Plaintiffs' questions or to help them. *Id*. at 10-11. Defendant Officer Dixon eventually arrived at the bank and helped facilitate the transaction, and Plaintiffs received the funds later that day. *Id*. at 11, 12.

This experience humiliated and devastated the Plaintiffs, and the five-day delay in receiving their funds during Christmastime caused them to experience great financial strain and anxiety, all of which culminated in Randle's hospitalization. ECF No. 42 at 11, 12. Thus, they decided to file a complaint with PNC's corporate office. *Id*. at 12. Burgess filed his complaint with Nowlin, the executive assistant vice president of client relations and the "actual" branch manager. *Id*. at 12, 39. Nowlin was apologetic and assured Plaintiffs that PNC took their complaint seriously. *Id*. at 12-13. On or about January 11, 2023, Plaintiffs' bank accounts were frozen and eventually closed, and Plaintiffs allege that this was because they filed a complaint. *Id*. at 13. Plaintiffs called Nowlin to express their displeasure, but Nowlin said that PNC could refuse service to whomever it pleases. *Id*. In response, Plaintiffs decided to file a lawsuit. *Id*. at 14.

On January 27, 2023, Plaintiffs returned to the bank to serve the PNC Defendants with notice of their claim. ECF No. 42 at 14. Avina and Chapa "immediately" called the police,

claiming that Plaintiffs had criminally trespassed after the December 21 incident and that Plaintiffs received notice. *Id*. The police detained Plaintiffs for about an hour while the police investigated the claim and released them after determining that they were not trespassing. *Id*.

## II. LEGAL STANDARD

### A. *Pro Se* Standard

The Court subjects the pleadings of *pro se* parties to less rigid analysis than those of a party represented by counsel. Courts must hold "a *pro se* complaint, 'however inartfully pleaded,' . . . to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, "even a liberally-construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825-26 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

### B. Rule 12(b)(6) Dismissal for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Rules require that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible

on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### C.     28 U.S.C. § 1915

Because Plaintiffs are proceeding *in forma pauperis*, their Amended Complaint is subject to *sua sponte* dismissal if it is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009). A complaint lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 326-27; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

### D.     Dismissal With or Without Prejudice

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). As a result, courts generally allow plaintiffs at least one opportunity to amend their pleadings. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329-30 (2002). Nonetheless, a court may appropriately dismiss an action with prejudice if it finds that the plaintiff has alleged his best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). Likewise, a court may dismiss a complaint with prejudice, thus foreclosing the plaintiff's opportunity to amend, whenever amendment of the pleadings would be futile. *See Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016).

## III.  ANALYSIS

### A.  Only Burgess states a claim under 42 U.S.C. § 1981 against Avina.

Under 42 U.S.C. § 1981 ("Section 1981"), "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." § 1981(a). The statute defines "[m]ake and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b); *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003). To bring a Section 1981 claim for contractual discrimination, a plaintiff "must allege that (1) [he or she is a member] of a racial minority; (2) [the d]efendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute[.]" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997). The PNC Defendants argue that Plaintiffs failed to allege the second and third elements. ECF No. 46 at 10.

"[N]aked allegations of discriminatory intent are too conclusory to survive a motion to dismiss[.]" *Body by Cook, Inc.*, 869 F.3d at 386 (cleaned up). Plaintiffs have the burden of initially pleading facts, that taken as true, permit the court to plausibly infer that "but for race, [they] would not have suffered the loss of a legally protected right." *Hoyt v. Am. Nat'l Ins. Co.*, No. 3-20-cv-545-L; 2021 WL 2823449 at *5 (N.D. Tex. Jul. 6, 2021) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am. Owned Media,* 140 S. Ct. 1009, 1019 (2020)). Alleging that "similarly situated non-minorities received better treatment could create the necessary inference and set the predicate for establishing the section 1981 claim." *Body by Cook, Inc.*, 869 F.3d at 386 (cleaned up).

          1.        Plaintiffs state no Section 1981 claim against Alvarez, Chapa, or Nowlin.

Plaintiffs' allegations against Alvarez, Nowlin, and Chapa are no more than "naked allegations of discrimination." *Id.* at 386. First, Plaintiffs plead no facts to show that Alvarez or Nowlin either intentionally discriminated against them or interfered with any of their protected § 1981 rights.

Second, Plaintiffs allege that Chapa discriminated against them on December 21, 2022, by refusing to allow Randle to assist Burgess with the transaction. ECF No. 7. They allege that this constituted discrimination based on Plaintiffs' race and Burgess's disability, and they hypothesize that Chapa would not have done this to a Caucasian customer. *Id*. But this allegation of intentional discrimination is too conclusory to overcome the PNC Defendants' motion. To survive a motion to dismiss, factual allegations "must raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Viewing the liberally construed facts in the light most favorable to the Plaintiffs, they are speculative at best. Plaintiffs raise "a mere possibility" of racial animus, but they do not show any facts to support a conclusion that racial discrimination motivated Chapa's actions. *Id.* at 557. Indeed, Chapa allowed Randle to assist Burgess on December 16 (ECF No. 42 at 9), so if her conduct was racially motivated, one would expect Chapa to consistently insist that Burgess complete the forms alone.

Plaintiffs also maintain that Chapa discriminated against them by asking questions a second time, allegedly against PNC's policies. ECF No. 42 at 12. Plaintiffs further allege that Nowlin admitted that Chapa's December 21, 2022, questioning was excessive, extreme, and unnecessary. *Id*. Nowlin also said that it was not PNC's policy "to ask a customer an exact time they would come into the bank[,]" like Chapa apparently did. *Id*. But these facts are no more than "naked [and

7

conclusory] allegations" that Chapa intentionally discriminated against Plaintiffs and do not show evidence of racial discrimination. *Body by Cook, Inc.*, 869 F.3d at 386.

Thus, Judge O'Connor should **DISMISS** Plaintiffs' Section 1981 claims against Alvarez, Nowlin, and Chapa **with prejudice**.

2. Burgess stated a claim against Avina under Section 1981.

Plaintiffs have alleged facts sufficient to show that Avina intended to discriminate against them based on their race. Liberally construed, Plaintiffs allege that Avina refused to serve them, tried to keep them from getting their money, and called the police on them because of their race. ECF No. 42 at 9-12. They also allege that she said she would not help and did not trust "people like y[']all," and that she clarified that by "people like y'all," she meant African Americans. *Id.* at 9-10. Taking all of these alleged facts as true and viewing them in the light most favorable to the Plaintiffs, they allege that discriminatory intent motivated Avina's actions.

The PNC Defendants argue that even if Avina intentionally discriminated against Plaintiffs, she did not interfere with one of their Section 1981 rights. ECF No. 46 at 10. Plaintiffs do not allege that Avina interfered with any of Randle's contractual rights, and no facts support any claims that Randle asserts against Avina. But liberally construed, Plaintiffs allege that Burgess was an accountholder at PNC, and Avina's actions interfered with "the enjoyment of all benefits, privileges, terms, and conditions of [that] contractual relationship." § 1981(b). Bank customers enjoy making withdrawals without bank employees working to keep them from receiving their money, as Plaintiffs allege Avina did. Moreover, Plaintiffs allege that Nowlin, on behalf of PNC, disavowed the actions by Chapa and Avina, and said "that there was no need to call the police" on December 21. ECF No. 42 at 13. Accordingly, Burgess has, liberally construed, alleged a claim against Avina under § 1981. Thus, Judge O'Connor should **DENY** the motion as to Burgess's

claim against Avina, **GRANT** it with respect to Randle's claim, and **DISMISS** Randle's Section 1981 claim against Avina.

   3. Plaintiffs do not state a claim against PNC under Section 1981.

Plaintiffs allege that PNC "failed to train, reprimand[,] or properly investigate the actions by the employees." ECF No. 42 at 14. But they also say that PNC's employees "faced disciplinary coaching for their responses." *Id*. at 13. They even allege that Nowlin, on behalf of PNC, disavowed the actions by Chapa and Avina, and said "that there was no need to call the police" on December 21. *Id*. Finally, the crux of Plaintiffs' Section 1981 complaint against PNC is that it froze and eventually closed their bank accounts because of the complaint that they filed. ECF No. 42 at 13. But none of these allegations show PNC's intentional racial discrimination.

Further, Plaintiffs have not alleged facts sufficient to show that PNC is vicariously liable for Avina's actions under Section 1981. While Section 1981 does not allow for vicarious liability against a public employer, in the Fifth Circuit, *respondeat superior* is available against private employers. *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235-36 (5th Cir. 1989); *Felton v. Polles*, 315 F.3d 470, 482 (5th Cir. 2002). Courts apply agency principles and look closely at the agency relationship for the "vital" element of control or right to control. *Flanagan*, 876 F.2d at 1235. There must "at the least, [be] a finding of an agency relationship." *Id*. at 1235-36. Further, the principal must "with knowledge of the surrounding circumstances, [] authorize[], ratif[y], or approve" of an action, "the effect[] of which [is] sufficient to establish a claim of intentional discrimination[.]" *Id*. at 1236 (internal quotation marks omitted). Because Section 1981 necessitates a finding of intentional discrimination, *respondeat superior* "demands a closer look at the" principal-agent relationship. *Id.* The court in *Flanagan* held an employer

vicariously liable where its employees "exercised almost exclusive control over the functioning of the" business, and they "initiated most [board] actions." *Id*.

Thus, the Court must determine whether Plaintiffs' well-pleaded facts, liberally construed in the light most favorable to the Plaintiffs, show that Avina exercised substantial control over the day-to-day activities of the banking center where she worked as to give rise to *respondeat superior* liability for PNC. *Id*. Plaintiffs allege that Avina falsely claimed to be the branch manager, while Nowlin was in fact the real branch manager. ECF No. 42 at 9, 39. Liberally construed, they allege that Avina had the authority to direct at least one employee to help the Plaintiffs. ECF No. 42 at 10. But this is not enough to show Avina's substantial control of PNC Bank, let alone The PNC Financial Services Group. Based on Plaintiffs' allegations, Nowlin had the most control of all of the individual defendants, but Plaintiffs raise no allegations of intentional discrimination on her part. Further, rather than authorization, approval, or ratification, Plaintiffs allege that PNC disapproved of Avina and Chapa's actions. ECF No. 42 at 13. Thus, Plaintiffs do not state a claim under Section 1981 against PNC, and Judge O'Connor should **DISMISS** it **with prejudice**.

### B. Plaintiffs do not allege that the PNC Defendants acted under color of state law, so the Court should dismiss their 42 U.S.C. § 1983 claims.

Title 42 U.S.C. 1983 ("Section 1983") creates a civil action against anyone who subjects another person within the jurisdiction of the United States "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," while acting "under color of" state law. 42 U.S.C. § 1983. "To state a claim under [Section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and [he or she] must show that the alleged deprivation was *committed by a person acting under color of state law*." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (emphasis in original) (internal quotation marks omitted) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Here, Plaintiffs allege

10

that the PNC Defendants violated numerous rights under the constitution and laws of the United States, so they have satisfied the first prong of Section 1983.

"[M]ere private conduct, no matter how discriminatory or wrongful, is excluded from [Section] 1983's reach." *Cornish*, 402 F.3d at 549 (cleaned up) (quoting *Richard v. Hoechst Celanese Chem. Group, Inc.*, 355 F.3d 345, 352 (5th Cir.2003), *cert. denied*, 543 U.S. 917 (2004)). To act under color of state law, the private actor's conduct that resulted in an alleged violation of a constitutional right must be "fairly attributable to the State." *Id.* (internal quotation marks omitted) (quoting *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982)). Further, courts "will not subject a merchant to [Section] 1983 liability unless an officer has failed to perform independent investigation[.]" *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 750 (5th Cir. 2001) (collecting cases). Independent investigation includes "such indicators as an officer's interview of an employee, independent observation of a suspect, and the officer writing his own report." *Id*.

Here, even assuming Plaintiffs have alleged enough facts to assert a Section 1983 claim, they do not allege how the PNC Defendants' actions are attributable to any state. Plaintiffs argue that the PNC Defendants became state actors when they called the police. ECF No. 52 at 10. But their well-pleaded facts show that the police, on arrival, conducted their own investigation as to whether Plaintiffs were trespassing, and, on concluding that they were not, released the Plaintiffs after a temporary detention. ECF No. 42 at 14; *see also Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc*., 673 F.2d 771, 772 (5th Cir.1982) (per curiam) (holding that the business was not a state actor where its employees only called the police and on arrival the "officer made his own investigation of the incident"). Accordingly, Plaintiffs do not allege a cognizable Section 1983 claim, and Judge O'Connor should **DISMISS** it **with prejudice**.

    **C.**    **Plaintiffs do not allege that a conspiracy of any kind existed, so the Court should dismiss their 42 U.S.C. § 1985(3) and § 1986 claims.**

Title 42 U.S.C. § 1985(3) imposes liability on two or more persons who "conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3). To state a claim, Plaintiffs must allege that (1) two or more persons conspired; (2) to deprive a person of equal protection under the laws; and (3) one of those persons took an "act in furtherance of the conspiracy"; (4) that caused either injury or deprivation of "having and exercising any right or privilege of a citizen of the United States[.]" 42 U.S.C. § 1985(3); *see also Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). A plaintiff must also allege that the defendants were motivated by race. *Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019).

Title 42 U.S.C. § 1986 imposes liability on those who have knowledge of a conspiracy as described in section 1985 but neglect or refuse to prevent the conspiracy. 42 U.S.C. § 1986; *Bradt v. Smith*, 634 F.2d 796, 801 (5th Cir. 1981). "[P]revailing under section 1985 is a prerequisite for recovery under section 1986." *Vanderwall v. Peck*, 129 F. App'x 89, 91 (5th Cir. 2005) (citing *Miss. Women's Med. Clinic v. McMillan*, 866 F.2d 788, 795 (5th Cir.1989)).

To recover under either § 1985(3) or § 1986, Plaintiffs must plead that a conspiracy exists. But the Amended Complaint on its face and construed liberally, does not plausibly allege any facts that support the existence of a conspiracy of any kind to deprive Plaintiffs of equal protection under the law. Though Plaintiffs allege that Avina said "Ms. Chapa has already informed me that you were problematic the last time" and that the PNC Defendants had previous knowledge of the approval of the withdrawal from Burgess's account, the Court cannot construe these allegations to support legal liability of Defendant for a claim under 42 U.S.C. § 1985(3). ECF No. 42 at 9; 52 at 11. The undersigned thus recommends that Judge O'Connor **DISMISS with prejudice** the Plaintiff's claims under 42 U.S.C. §§ 1985(3) and 1986.

      **D.**     **Because Plaintiffs only seek monetary damages, their claims under the Americans with Disabilities Act are frivolous and should be dismissed.**

The only remedy available under Title III of the Americans with Disabilities Act ("ADA") is injunctive relief. *Frame v. City of Arlington*, 616 F.3d 476, 488 n.17 (5th Cir. 2010) (citing 42 U.S.C. § 12188(a)), *on reh'g en banc*, 657 F.3d 215 (5th Cir. 2011); *Morrison v. Unum Life Ins. Co. of Am.*, No. CIV. 06-2400, 2008 WL 4224807, at *3 (W.D. La. Sept. 10, 2008) (collecting cases) ("courts have uniformly held that monetary damages are not available in private suits under Title III of the ADA"). Because Plaintiffs only seek monetary damages and allege no ongoing harm for which injunctive relief would be appropriate, Judge O'Connor should **DISMISS** this claim **with prejudice**.

      **E.**     **Because there is no private right of action under the Privacy Act, Plaintiffs' claims brought under this title are frivolous and should be dismissed.**

Plaintiffs bring claims under the Privacy Act, 5 U.S.C. 552a, and 12 C.F.R. § 310.10. ECF No. 42 at 18. But "the private right of action created by 5 U.S.C. § 552a(g) . . . is limited to actions against agencies of the federal government." *Steward v. Bryan*, No. 02-61059, 2003 WL 22295510, at *1 (5th Cir. Oct. 7, 2003); 5 U.S.C. § 552a(g) ("the individual may bring a civil action against *the agency*" (emphasis added)); *Carr v. Johnson*, 51 F. App'x 928, at *1 (5th Cir. 2002); *see also Dean v. City of New Orleans*, 544 F. App'x 353, 355 (5th Cir. 2013) ("The Privacy Act generally applies only to the production of records by *federal* agencies.") (emphasis in original). Accordingly, the court should **DISMISS** Plaintiffs' claims against the Defendants under the Privacy Act **with prejudice**.

      **G.**     **Plaintiffs' claims under The Banking Act of 1933, The Federal Deposit Insurance Act, and 12 U.S.C. § 1819 are frivolous and should be dismissed.**

While Plaintiffs cite to The Banking Act of 1933 and The Federal Deposit Insurance Act, they do not identify portions of these acts under which they attempt to assert a claim. And while

they cite to these acts as well as 12 U.S.C. § 1819, liberally construed, they appear to make a claim under 15 U.S.C. § 6802, by alleging that the PNC Defendants improperly shared their private information with the police. ECF Nos. 42 at 18; 52 at 14-15.

Plaintiffs have not alleged facts to support such claims under the cited acts. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). A claim under 15 U.S.C. § 6802(b) is a claim under the Gramm-Leach-Biley Act ("GLBA"). *Williams v. Santander Consumer USA Holdings, Inc.*, No. 3:21-CV-3176-D, 2022 WL 562896, at *7 (N.D. Tex. Feb. 24, 2022) (collecting cases). "But the GLBA does not provide a private cause of action." *Id.* (citing *Hall v. Phenix Investigations, Inc*., 2014 WL 5697856, at *9 (N.D. Tex. Nov. 5, 2014)).

In their Amended Complaint, Plaintiffs do not identify what non-public personal information the PNC Defendants shared, how they shared it, or what damages Plaintiffs suffered as a result. Plaintiffs only raise conclusory allegations that "Avina and PNC Bank did give out Personal Identifiable information to a third party, voluntarily when it was not necessary and without the written consent of the plaintiffs[.]" ECF No. 42 at 18.

In their Response to the Motion, Plaintiffs clarify that the information was Plaintiffs' names and dates of birth. ECF No. 52 at 14. When considering a motion to dismiss a complaint, however, a court can rely only on the complaint, documents properly attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). A plaintiff cannot add factual allegations to his complaint by way of his response. *Sheddy v. JPMorgan Chase Bank, N.A.*, No. 3:12-cv-2804-M-BF, 2013 WL 5450288, at *3 n.3 (N.D. Tex. Sept. 30, 2013).

Moreover, while the GLBA does generally prohibit financial institutions from disclosing non-public personal information to a non-affiliated third party (15 U.S.C. § 6802), as discussed above, it does not create a private cause of action, so Judge O'Connor should **DISMISS** these claims **with prejudice**.

### H. Plaintiffs do not state a claim for any state law violations.

Plaintiffs claim that "[PNC] Defendants collectively cooperated with police to maliciously prosecute Plaintiffs." ECF No. 42 at 22. In Texas, the first element of a malicious prosecution claim is the institution of a civil or criminal proceeding against the plaintiff. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996) (civil); *Kroger Texas Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 n.3 (Tex. 2006) (criminal). Plaintiffs do not allege that the PNC Defendants instituted any sort of proceeding against them, so the malicious prosecution claims against the PNC Defendants do not to state a claim, and the Court should **DISMISS** them **with prejudice**.

"The essential elements of false imprisonment [or arrest] are: (1) willful detention; (2) without consent; and (3) without authority of law." *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002) (internal quotation marks omitted); *Montgomery Ward & Co. v. Garza*, 660 S.W.2d 619, 621 (Tex. App.—Corpus Christi-Edinburg 1983, no writ). In Texas, "liability for false imprisonment extends beyond those who willfully participate in detaining the complaining party to those who request or direct the detention." *Id.* at 507. But merely reporting a crime and identifying the suspect does not give rise to liability to a private citizen, who enjoys the "clear legal right to report criminal misconduct to authorities." *Id.* at 507-08. Thus, "even when the reporting party mistakenly identifies the wrong person," private citizens may give information to the police or accuse another of committing a crime, "so long as [they] leave[] to the police the decision as to what shall be done about any arrest, without persuading or influencing them." *Id.*

15

Here, Plaintiffs allege no facts to show that their temporary detention by the police was without authority of law, nor do they show that the private citizens involved took any steps beyond reporting a suspected crime and identifying a suspect. Plaintiffs argue that they have stated facts to show that the PNC Defendants directed the police officers to detain the plaintiffs, but the Amended Complaint only contains facts to show the PNC Defendants called the police. ECF Nos. 52 at 15; 42 at 20-23. Thus, Judge O'Connor should **DISMISS** Plaintiffs' state law claims **with prejudice**.

### I. Plaintiffs do not allege that the PNC Defendants receive federal financial assistance, so Judge O'Connor should dismiss their claims under 42 U.S.C. § 2000d.

Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Private individuals may sue to enforce this provision. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015). Title VI "prohibits only intentional discrimination." *Alexander*, 532 U.S. at 280. So, "a Title VI plaintiff must prove discriminatory intent" to prevail. *Billiot v. Terrebonne Par. Sch. Bd.*, No. CV 21-1144, 2021 WL 5083710, at *3 (E.D. La. Nov. 2, 2021) (citing *Fennell*, 804 F.3d at 408). Further, this statute only allows claims "against the institution receiving federal funds, not employees of those institutions." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009)). Because "only public and private entities can be held liable under Title VI," Plaintiffs' claims against the individual defendants are frivolous, and Judge O'Connor should dismiss them. *Price v. La. Dep't of Educ.*, 329 F. App'x 559, 561 (5th Cir. 2009) (per curiam).

To state a claim under Title VI, a plaintiff must allege that "(1) the defendant engaged in intentional discrimination based on race, color, or national origin; and (2) that the defendant

16

received federal financial assistance." *Pathria v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 531 F. App'x 454, 455 (5th Cir. 2013) (emphasis removed). Where a plaintiff does not allege a discriminatory policy, he or she "must plausibly allege that an 'appropriate person' . . . —*i.e.*, someone who could take corrective measures—had 'actual knowledge' of intentional discrimination yet responded with 'deliberate indifference.'" *Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x 233, 237 (5th Cir. 2020).

As discussed above, Plaintiffs only allege facts sufficient to show that Avina acted with discriminatory intent, and they may not bring a Section 2000d claim against individuals. *See supra* Section III.A. They do not allege that any defendant acted pursuant to a discriminatory policy. In fact, they allege that Avina and Chapa's actions were against PNC policy. ECF No. 42 at 13. Further, they do not allege that PNC is federally funded. *See Nia Home Health Care, Inc. v. Whitney Nat. Bank*, No. CIV. A. 97-1903, 1998 WL 171522, at *2 (E.D. La. Apr. 9, 1998), *aff'd*, 204 F.3d 1115 (5th Cir. 1999) ("Perhaps plaintiff may contend that because [the bank]'s customer's accounts are federally insured, this constitutes 'Federal financial assistance.' This argument, however, has already been raised and rejected.") (citing *Butler v. Capital Federal Sav.*, 904 F. Supp. 1230, 1233 (D. Kan. 1995)). The authority Plaintiffs cite in their response does not undermine this holding. ECF No. 52 at 17 (citing *Jones v. S. Univ.*, 834 F. App'x 919, 923 (5th Cir. 2020) (affirming district court's dismissal of Title VI claims for failure to state a claim)). Accordingly, Plaintiffs have not stated a claim under 42 U.S.C. § 2000d, and Judge O'Connor should **DISMISS** these claims **with prejudice**.

### J. Because Plaintiffs pleaded numerous theories of relief, recovery for intentional infliction of emotional distress is unavailable.

Under Texas law, intentional infliction of emotional distress is a "gap filler" tort available only when there is no other recognized theory or redress, even if emotional distress results from

17

the underlying actions. *Miller v. Target Corp.*, 854 F. App'x 567, 569 (5th Cir. 2021); *Hoffman-La Roche, Inc., v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Plaintiffs argue the same facts that they alleged in their other claims to seek recovery for intentional infliction of severe emotional distress. ECF No. 42 at 25-26, 30-31. The PNC Defendants argue that this claim fails because the remedies available under those claims subsume Plaintiffs' claims for emotional distress. ECF No. 46 at 18-20. The Court does not question Plaintiffs' claims that they suffered emotional distress, but because they have pleaded several recognized theories of relief, the Court should **DISMISS** their claims for tortious infliction of emotional distress **with prejudice**.

### L. The Court should dismiss with prejudice all of Plaintiffs' claims against the PNC Defendants except for Burgess's Section 1981 claim against Avina.

While the Court liberally construes the pleadings of *pro se* plaintiffs to see if they allege a viable claim, nothing in Plaintiffs' Complaint or Amended Complaint contains enough facts to "raise a right to relief above the speculative level" as to any of their claims except Burgess's Section 1981 claim against Avina. *Twombly*, 550 U.S. at 555. Thus, the undersigned must conclude that "within the universe of theoretically provable facts there [does not] exist[] a set which can support a cause of action under [the] complaint, indulgently read." *See Covington*, 528 F.2d at 1370. Despite having amended their complaint, Plaintiffs' Amended Complaint lacks "an arguable basis . . . in fact" such that it does not state a legally cognizable claim. Accordingly, Judge O'Connor should **DISMISS** Plaintiffs' claims, except for Burgess's Section 1981 claim against Avina, **with prejudice**. *See Neitzke*, 490 U.S. at 325.

The decision to allow amendment of the pleadings is within the "sound discretion of the district court." *Norman v. Apache Corp.,* 19 F.3d 1017, 1021 (5th Cir. 1994). In determining whether to allow an amendment of the pleadings, courts consider factors such as undue delay in the proceedings, undue prejudice to the opposing parties, timeliness of the amendment, and futility

18

of the amendment. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.,* 690 F.2d 1157, 1163 (5th Cir.1982). But "[a]t some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (alteration in original) (quoting *Jacquez v. Procunier,* 801 F.2d 789, 792-93 (5th Cir. 1986)). Plaintiffs have pleaded their best case after filing an Original and Amended Complaint. The undersigned concludes that allowing Plaintiffs another opportunity would be an inefficient use of the Court's resources, cause unnecessary delay, and be futile.

## IV.   CONCLUSION

After considering the pleadings and the applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** Defendants' Motion in part, **DENY** it in part, and **DISMISS with prejudice** all of Plaintiffs' claims against the PNC Defendants except for Plaintiff Sywayne Burgess's 42 U.S.C § 1981 claim against Defendant Cindy Avina.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and

legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    **SIGNED** on February 12, 2024.

                                                         Hal R. Ray, Jr.
                                                        UNITED STATES MAGISTRATE JUDGE